UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROCHESTER COMMUNITY SCHOOL CORPORATION, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) CAUSE NO. 3:06-CV-351 RM ) |
| HONEYWELL, INC. and FIREMAN'S FUND INSURANCE CO., | ) ) ) |
| Defendants | ) |

OPINION and ORDER

The claims of Rochester Community School Corporation against Honeywell, Inc. and Fireman's Fund Insurance Company relate to three guaranteed energy savings contracts between Rochester and Honeywell and the performance bonds issued by Fireman's Fund to cover Honeywell's guarantees under the contracts. Rochester filed its complaint in May 2006 in the Fulton Circuit Court alleging breach of the contracts by Honeywell and breach of the performance bonds by Fireman's Fund. Honeywell and Fireman's Fund timely removed the action to this court pursuant to 28 U.S.C. § 1332.

Numerous motions pend: Rochester's motion for remand, the defendants' motion to compel arbitration on the GESCs and stay the proceedings relating to the performance bonds pending the outcome of the arbitration, the defendants' motion for a hearing on their motion to compel and stay, and Rochester's motion

to strike the affidavits filed by Honeywell and Fireman's Fund in connection with the above motions.

## I.  BACKGROUND

The background facts relating to the contracts and performance bonds aren't in dispute, and the following review of those facts is taken from the parties' various filings in support of their motions. Rochester and Honeywell entered into three Guaranteed Energy Savings Contracts – the first in May 1994 for Honeywell's provision and installation of various energy conservation measures in five of Rochester's corporation buildings (GESC I); the second in June 1997 for Honeywell's repair and/or replacement of roofs at Rochester's middle and high school buildings (GESC II); and the third in November 1997 involving renovations of the high school swimming pool and other areas of the high school and middle school (GESC III). Each contract contained Honeywell's guarantee that the work performed would result in energy and operational cost savings to Rochester during the ten-year guarantee period of each contract and Honeywell's agreement to reimburse Rochester for any deficiency between the annual guaranteed amount of savings and the actual savings realized if the construction failed to achieve the guaranteed savings for any year. Honeywell also provided Rochester with performance bonds through Fireman's Fund covering the guarantees.

For purposes of the motions before the court today, the parties' dispute relates to the language of paragraph 9 of the "Addendum to the Honeywell

Agreement Between Honeywell Inc. and Rochester Community School Corporation" attached to GESC II and GESC III. The parties agree that the Addendum isn't attached to and doesn't relate to GESC I or the performance bonds.

*(a) GESC II*

In June 1997, the Rochester School Board voted to approve the work proposed in GESC II to be performed at the middle and high school buildings. Honeywell representatives Bradd Schneider and Brian Pickering then met with Rochester's Superintendent Robert Poffenbarger and counsel Robert Rund to discuss the terms of GESC II. Rochester officials proposed various amendments to the language of GESC II and during the negotiations Messrs. Schneider and Pickering told them that an authorized Honeywell representative would need to approve any proposed modifications to the original contract terms.

One section of the original contract Rochester sought to modify was Section 12.1 of GESC II, which reads as follows:

> The parties agree that any controversy or claim between Honeywell and [Rochester] arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration conducted in accordance with the Rules of the American Arbitration Association before a single arbitrator at a location specified by Honeywell.

Rochester proposed amending that section to make arbitration available only by the parties' agreement and to require that any claims related to the contract be litigated in state court in Fulton County, Indiana. Following discussion, the

3

parties reduced Rochester's proposed modifications to writing ("the Addendum") and the following language was included as paragraph 9 of the Addendum:

> In contract clause 12.1, replace the words, "The parties agree that," for the words, "If the parties, by mutual consent, agree to use arbitration as means of dispute resolution," and add the following paragraph at the end of the clause, "If the parties fail to agree to use arbitration, the claim shall be decided by a court of competent jurisdiction of Fulton County, Indiana."

On June 17, 1997, Superintendent Poffenbarger signed GESC II on behalf of the school corporation on page 10 of the contract, beneath the arbitration clause (Section 12.1) on page 11, and on the Addendum; he also initialed each page of the contract, the Addendum, and the other attachments to the contract. Two day later, Thomas Abele, Honeywell's Education Market Manager, signed GESC II for Honeywell on page 11 beneath the arbitration clause (Section 12.1), but he did not sign the Addendum. According to Honeywell, a copy of GESC II was returned to Rochester, and the work on the schools went forward.

### (b) GESC III

The Rochester School Board approved the work to be performed under GESC III in November 1997. The parties agree that the language of GESC III and its attached Addendum is identical to that of GESC II (except for the description of the scope and cost of the work to be performed) and the GESC II Addendum (including paragraph 9 quoted above). Rochester officials signed the contract on November 25 – Superintendent Robert Poffenbarger signed the contract on page

10, Robert Poffenbarger, Martin Smith, and John Walker signed beneath the arbitration clause (Section 12.1) on page 11, and Robert Poffenbarger signed the Addendum. Sometime later, Honeywell representative F.T. Bohannon, Jr. signed GESC III on pages 10 and 11 of the contract, but didn't sign the Addendum. Honeywell says a copy of GESC III was returned to Rochester, and the school renovations proceeded.

*(c) Rochester's Complaint*

In May 2006, Rochester filed suit against Honeywell and Fireman's Fund in Fulton Circuit Court claiming damages in Count I for breach of contract by Honeywell for failing to perform work and reimburse Rochester for energy and operational savings shortfalls (under each GESC) and for charging Rochester in excess of the contract price (under GESC I); seeking a declaratory judgment in Count II that Honeywell must reimburse Rochester for energy and operational savings shortfalls under the remaining guarantee years in GESC II and GESC III; seeking damages in Count III for fraudulent representations by Honeywell in connection with GESC II and GESC III; requesting damages from Honeywell in Count IV based on Honeywell's unjust enrichment in connection with all three GESC projects; and seeking damages in Count V from Fireman's Fund for breach of the performance bonds.

Honeywell and Fireman's Fund removed the action to this court, and Rochester filed its motion to remand the case to Fulton County based on the

language of paragraph 9 of the Addendum to GESC II and GESC III. Honeywell and Fireman's Fund objected to remand and moved to compel arbitration on the GESCs and stay the proceedings relating to the performance bonds. Honeywell and Fireman's Fund also requested a hearing on their motion. Rochester then moved to strike the affidavits of Thomas Abele and Fred Thomas Bohannon filed in support of the motion and response briefs filed by Honeywell and Fireman's Fund.

## II.   MOTION FOR ORAL ARGUMENT AND MOTION TO STRIKE

Honeywell and Fireman's Fund have requested that the court hold oral argument on the pending motions to help the court understand the contracts at issue and to allow the parties to respond to questions the court might have about the facts. A review of the parties' comprehensive submissions convinces the court that oral argument is unnecessary and would only delay a ruling on the motions, which is too long overdue. Therefore, the court denies the motion for oral argument.

Rochester has moved to strike the affidavits of Thomas Abele and Fred Bohannon. According to Rochester, those affidavits are not based on personal knowledge, as confirmed by the deposition testimony of Mr. Abele and Mr. Bohannon on the topics discussed in the affidavits. Because the affidavits don't affect the outcome of the pending motions, the motion to strike the affidavits is denied.

III.  DISCUSSION

Rochester seeks remand of this action, and objects to the motion to compel arbitration, based on its argument that paragraph 9 of the Addendum to GESC II and GESC III prohibits removal and compelled arbitration.[1] Paragraph 9 of the Addendum provides in pertinent part, "If the Parties fail to agree to use arbitration, the claim shall be decided by a court of competent jurisdiction of Fulton County, Indiana." Rochester says that language demonstrates an agreement by the parties that in lieu of an agreement to arbitrate, a state court sitting in Fulton County, Indiana is to resolve all disputes relating to the GESCs. Rochester maintains the parties haven't agreed to arbitration and so, pursuant to the above language, Honeywell waived its right to removal under 28 U.S.C. § 1441. Thus, Rochester says, remand to the Fulton Circuit Court is proper.

Honeywell responds that even though Rochester officials proposed and approved the Addendum, its provisions, including paragraph 9, are unenforceable because Honeywell officials never signed or approved the Addendum to GESC II or GESC III. Honeywell says GESC II and GESC III require that all amendments be in writing and signed by both parties, as evidenced by Section 1.2 which states that the contracts "may be amended only by written instrument signed by both [Rochester] and Honeywell." Honeywell concludes that because Honeywell officials

---

[1] The parties agree that Indiana law controls their disputes: Section 20 of GESC I provides that the agreement "shall be governed . . . by the laws of the State of Indiana;" Section 10.1 of GESC II and GESC III states that each agreement "shall be governed by the law of the State where the Work is performed;" and pursuant to Section 9 of the performance bonds, "any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located."

7

neither approved nor ratified the Addendum, the forum selection clause isn't enforceable and removal isn't foreclosed.

Honeywell also argues that because the Addendum language isn't enforceable, arbitration of this dispute is controlled by Section 12 of GESC II and GESC III, which directs that "any controversy or claim between Honeywell and [Rochester] arising out or relating to this Agreement, shall be settled by arbitration conducted in accordance with the Rules of the American Arbitration Association before a single arbitrator at a location specified by Honeywell." According to Honeywell, even though GESC I contains no arbitration clause, Rochester's claims under GESC I may be resolved through arbitration as well because those claims are closely related to the claims under GESC II and GESC III, which contain mandatory arbitration clauses. Honeywell maintains that because all three GESCs relate to the provision of equipment and services designed to save Rochester schools energy and operational costs and are part of an on-going and long-standing business relationship between Rochester and Honeywell, Rochester's claims under the three contracts are sufficiently related to be settled by arbitration. Honeywell argues with respect to the performance bonds (which lack an arbitration clause) that Rochester's claims against Fireman's Fund must be stayed under the principles of parallel-proceeding abstention pending resolution of the disputes relating to the GESCs.

8

*(A) The Addendum*

The issues of remand and whether to compel arbitration both turn on whether the Addendum is enforceable. Contract interpretation under Indiana law requires the court to ascertain and effectuate the parties' intent at the time the contract was made. <u>Stelko Elec., Inc. v. Taylor Community Schools Building Corp.</u>, 826 N.E.2d 152, 156 (Ind. Ct. App. 2005). The court must construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless" and "accept an interpretation of the contract that harmonizes its provisions, as opposed to one that causes the provisions to conflict." <u>Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC</u>, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007).

Rochester argues that the Addendum is enforceable based on the language of Section 1.2 of GESC II and GESC III, which provides that, "This Agreement, including all attachments and exhibits hereto, represents the entire agreement." Rochester says that because the Addendum was attached to each contract, the Addendum language was part of the agreements. Rochester also claims the additional language in Section 1.2, which provides that the original contract terms "may be amended only by written instrument signed by both [Rochester] and Honeywell," is inapplicable because "the Addendum did not amend the parties' agreement. Instead, the Addendum is part of the original terms of the agreement." Reply, at 13.

The court can't agree that the Addendum was part of the original agreement rather than an amendment to the standard contract terms. Rochester officials

9

negotiated with Honeywell representatives in hopes of amending the original contract terms – Rochester sought to change the terms of the contract relating to arbitration and add a forum selection clause, thereby amending the standard terms of the original agreement. Rochester officials discussed their proposed changes with Honeywell representatives Bradd Schneider and Brian Pickering and were informed by Messrs. Schneider and Pickering that authorized Honeywell officials would have to review and ratify any such amendments or modifications. Even if, as Rochester claims, Messrs. Schneider and Pickering were trained to alert their supervisors to any proposed amendments or modifications to the standard form language but apparently didn't do so [Reply, at 5], whether Mr. Schneider and/or Mr. Pickering discussed the proposed Addendum language with Honeywell officials doesn't affect whether Rochester was aware that approval by Honeywell officials was necessary.

Rochester complains that "Honeywell did not communicate, either before or after it returned GESC II and GESC III, that it had not accepted the addendum." Reply, at 10-11. But Rochester was the party seeking amendment of, and addition of specific language to, the original contract terms. Rochester officials, therefore, had a responsibility to confirm that the Addendum – which contained their proposed changes – had been ratified. *See, e.g.,* Grymes v. Sanders, 93 U.S. 55, 61 (1876) ("The party complaining must have exercised at least the degree of diligence which may be fairly expected from a reasonable person. [Appellee] could easily have taken measures to see and verify [the necessary information, but] did

10

nothing of the kind. The appellees paid their money without even inquiring of any one professing to know [the necessary information]"); Hollett v. Evans, 1867 WL 3122, *1 (Ind. 1867) ("their proceedings were irregular . . . but that was their own fault and they can derive no advantage from it").

Honeywell says its officials didn't sign the Addendum because they didn't agree to the terms. According to Honeywell, its return of a copy of each contract to Rochester with the unsigned Addendum constituted notice to Rochester that the company hadn't approved the Addendum's terms. Rochester responds that Honeywell's failure to remove the Addendum from the contract package constituted Honeywell's representation that the Addendum was acceptable. Rochester insists its understanding was that the contracts returned by Honeywell, which included the unsigned Addendum, constituted Honeywell's agreement to the terms of GESC II and GESC III as modified by the Addendum.

The record establishes that Rochester officials understood that Section 1.2 of the contracts required that any change or amendment to the original terms be in writing and signed by representatives of Rochester and Honeywell, R. Rund Dep., at 62; that Rochester proposed the language relating to "arbitration by agreement only" and "litigation in state court only" as a modification to the standard contract terms, R. Rund Dep., at 66, 71, 79; that Bradd Schneider and Brian Pickering didn't have the authority to approve or sign the contract or Addendum on behalf of Honeywell, R. Rund Dep., at 83-86; and that approval of the proposed contract modifications by Honeywell management was necessary, R.

11

Rund Dep., at 71, 72, 76, 83-86. Rochester officials didn't initiate any contact, discussion, or follow-up with Honeywell as to whether the Addendum language had been approved, R. Rund Dep., at 89, 116-117, and Rochester officials didn't examine the contract documents after they were returned by Honeywell to confirm that the Addendum had been signed by Honeywell officials. R. Rund Dep., at 66, 111. Rochester didn't take the steps necessary to confirm that the Addendum had received the necessary ratification. Robinson v. Glass, 94 Ind. 211, 1884 WL 5217, *2 (Ind. 1884) ("contracting parties must exercise ordinary prudence in conducting negotiations and executing documents"); *cf.* Steel Dynamics, Inc. v. Big River Zinc Corp., No. 1:06-CV-110, 2006 WL 1660599, *7 (N.D. Ind. June 9, 2006) ("Succinctly, if [SDI] makes a habit of signing contracts without reading them, they must bear the consequences.").

Rochester's claim that Honeywell's approval of the Addendum language wasn't necessary isn't supported by the terms of the original contract, the parties' negotiations, or the parties' understanding of the necessary approval process. Ignoring a portion of Section 1.2 would render those terms ineffective or meaningless, which must be avoided in contract interpretation. Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007); Stelko Elec., Inc. v. Taylor Comm'y Sch. Building Corp., 826 N.E.2d 152, 156 (Ind. Ct. App. 2005). After a careful review and consideration of the parties' arguments and submissions, the court concludes, as discussed above, that the unsigned Addendum, and therefore the language of paragraph 9, is not enforceable.

*(B) Motion for Remand*

Based on the unenforceability of the Addendum, Rochester's remand motion must be denied. But even if the Addendum were enforceable, the language of paragraph 9 wouldn't warrant the granting of Rochester's motion. A defendant has a statutory right to remove a civil action from a state court "to the district court of the United States for the district embracing the place where such action is pending." 28 U.S.C. § 1441(a). While a forum selection clause may constitute the waiver of a defendant's right to remove an action to federal court, any such waiver must be "'clear and specific' . . . to head off disputes over where the forum selection clause directs that suit be brought." IFC Credit Corp. v. Aliano Bros. Gen. Contractors, 437 F.3d 606, 612 (7th Cir. 2006). A forum selection clause prohibiting litigation in federal court "must provide unambiguously that all litigation arising under the subject contract is to be conducted in a specific state court before such a clause may prevent removal." Submersible Sys. Technology v. 21st Century Film Corp., Inc., 767 F. Supp. 266, 267-268 (S.D. Fla. 1991).

The forum selection clause proposed by Rochester doesn't specify that claims under the contract are to be decided by "a *state* court of Fulton County" or by "the Superior or Circuit Courts of Fulton County," and Rochester hasn't alleged or argued that the federal courts in the Northern District of Indiana, which encompasses Fulton County, don't have competent jurisdiction over claims arising in Fulton County. Rochester explains that its counsel didn't want the litigation in federal court "because he did not have federal court trial experience," but had

Rochester wanted to preclude litigation in federal court, it should have stated that intention more clearly.[2] Construing any contract ambiguity against Rochester as the drafting party, Time Warner Entertainment Co. v. Whiteman, 802 N.E.2d 886, 894 (Ind. 2004), the court concludes that nothing in the language of the clause provides that venue wouldn't be proper in a federal district court, so removal was proper.

### (C) Motion to Compel Arbitration

Section 12 of GESC II and GESC III provides, in pertinent part, that the parties "agree that any controversy or claim between Honeywell and [Rochester] arising out or relating to this Agreement, shall be settled by arbitration conducted in accordance with the Rules of the American Arbitration Association before a single arbitrator at a location specified by Honeywell." Honeywell asks the court

---

[2] *Compare* Titan Finishes Corp. v. Spectrum Sales Group, 452 F. Supp.2d 692, 695 (E.D Mich. 2006) (holding that language of forum selection clause – "venue shall be proper in the Wayne County Circuit Court, State of Michigan" – "does not provide that venue would not also be proper in a federal district court in Michigan"); Links Design, Inc. v. Lahr, 731 F. Supp. 1535, 1536 (M.D. Fla. 1990) (clause stating any legal action "shall be in Polk County, Florida," held to include federal district court for the district including Polk County); International Ass'n of Bridge, Structural and Ornamental Iron Workers v. Koski Constr. Co., 474 F. Supp. 370, 371-372 (W.D. Pa. 1979) (language providing that legal action "shall be in Erie County, Pennsylvania," held to include federal district court for Western District of Pennsylvania); TruServ Corp. v. Prices Ilfeld Hardware Co., Inc., No. 01-C-50271, 2001 WL 1298718, at *2 (N.D. Ill. Oct. 24, 2001) (phrase "courts located in Cook County or any Illinois county contiguous to Cook County, Illinois" held to include state and federal courts); *with* American Soda, LLP v. U.S. Filter Wastewater Group, Inc., 428 F.3d 921, 926 (10th Cir. 2005) (concluding that parties' agreement to "submit to the jurisdiction of the Courts of the State of Colorado" limited litigation to the Colorado state court system); Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 321 (10th Cir. 1997) ("Because the language of the clause refers only to a specific county and not to a specific judicial district, we conclude venue is intended to lie only in state district court."); Comcount, Inc. v. Coconut Code, Inc., No. IP02-0183-C-T/K, 2002 WL 1349913, at *2 (S.D. Ind. Apr. 17, 2002) (language that "the rights and liabilities of the parties hereto [shall be] determined in the state courts of Broward County, Florida," held to provide "exclusive jurisdiction in the state courts of Broward County, Florida").

14

to determine that all of Rochester's claims against Honeywell are subject to arbitration. Honeywell says that even though GESC I doesn't contain an arbitration clause, Rochester's claims under GESC I may be resolved through arbitration because those claims are closely related to the claims under GESC II and GESC III. Honeywell maintains that all three GESCs relate to the provision of equipment and services designed to save Rochester schools energy and operational costs and are part of an on-going and long-standing business relationship between Rochester and Honeywell, so Rochester's claims under the three contracts are sufficiently related to be settled by arbitration. Honeywell concedes that Rochester's claims against Fireman's Fund under the performance bonds, which also don't contain an arbitration clause, are not subject to arbitration and asks that those claims be stayed pursuant to 9 U.S.C. § 3 pending resolution of the Rochester-Honeywell dispute.

Rochester argues against arbitration because, Rochester says, it never agreed to mandatory arbitration, as evidenced by the language of paragraph 9 of the Addendum. Alternatively, Rochester says if the Addendum isn't enforceable, arbitration shouldn't be mandated because the parties had no meeting of the minds on the issue of arbitration and, in fact, Honeywell's conduct led Rochester to believe that the parties had agreed to make arbitration voluntary. Rochester also insists its claims under GESC I are independent of its claims under GESC II or GESC III: "the scope of work, term, and amount of guaranteed energy savings are different in each agreement." Resp., at 32. Rochester concludes that because

15

GESC I and the performance bonds don't contain arbitration clauses, arbitration as to any portion of the parties' dispute is inappropriate.

Pursuant to the Federal Arbitration Act, a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act provides for a stay of proceedings when an issue in the proceedings is referable to arbitration, 9 U.S.C. § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. "Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties." AT & T Techs., Inc. v. Communication Workers of America, 475 U.S. 643, 649 (1986).

"When resolving arbitrability disputes, a court must bear in mind the liberal federal policy in favor of arbitration agreements. Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." International Bhd. of Elec. Workers, Local 21 v. Illinois Bell Tele. Co., 491 F.3d 685, 687-688 (7th Cir. 2007) (internal quotations and citations omitted); *see also* Norwood Promotional Prods., Inc. v. Roller, 867 N.E.2d 619, 623 (Ind. Ct. App. 2007) ("When construing arbitration agreements, every doubt is to be

resolved in favor of arbitration and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used."). Because arbitration is "a matter of contract . . . a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 82 (2002); *see also* American Arbitration Assoc. v. North Miami Comm'y Schs., 866 N.E.2d 296, 301 (Ind. Ct. App. 2007) ("parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication").

Arbitration may be compelled if the following three elements are present: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. Zurich American Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 690 (7th Cir. 2005); *see also* Norwood Promotional Prods. v. Roller, 867 N.E.2d at 623 (arbitration may be compelled if there is "an enforceable agreement to arbitrate the dispute" and if "the dispute is the type of claim that the parties agreed to arbitrate"). "The Federal Arbitration Act states that if the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied." Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004); *see also* Roddie v. North American Manufactured Homes, Inc., 851 N.E.2d 1281, 1284 (Ind. Ct. App. 2006) ("Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration.").

This arbitration clause in GESC II and GESC III is broad and unambiguous: it clearly states that arbitration shall be used to settle "any controversy or claim between Honeywell and [Rochester] arising out or relating to" GESC II and GESC III. International Broth. of Elec. Workers, Local 21 v. Illinois Bell Tele. Co., 491 F.3d at 688 ("When interpreting a contract, we look first to the plain meaning of the provision, and strive to avoid absurd results."); Norwood Promotional Prods. v. Roller, 867 N.E.2d at 626 ("the parties' contract is unambiguous; thus, we give the words used in the contract their plain and ordinary meaning"). Rochester hasn't argued that its claims against Honeywell under GESC II and GESC III are outside the scope of the arbitration clause, maintaining instead that it didn't agree to the arbitration clause's inclusion in either contract. Rochester, though, hasn't argued that the clause is invalid or was induced by fraud, or that it was unaware of the terms of the clause. Rochester proposed amending the standard contract terms to make arbitration voluntary, but Rochester's proposed amendment didn't receive the necessary ratification by Honeywell officials, and Rochester didn't take steps to verify or insure that its amendment became part of the contract. *Cf.* Comprehensive Accounting Corp. v. Rudell, 760 F.2d 138, 140 (7th Cir. 1985) ("In the absence of fraud or duress, a person who signs a contract cannot avoid his obligations under it by showing that he did not read what he signed.").

While "[n]o one should be forced into arbitration without an opportunity to show that he never agreed to arbitrate the dispute that is the subject of the arbitration," Comprehensive Accounting Corp. v. Rudell, 760 F.2d at 140,

18

Rochester has been afforded that opportunity. *See infra* Section III(A). Thus, because GESC II and GESC III each contain an arbitration clause applicable to Rochester's claims against Honeywell under those contracts, arbitration of those claims is appropriate. *See* <u>Metro East Center for Conditioning and Health v. Qwest Communications Int'l, Inc.</u>, 294 F.3d 924, 926 (7th Cir. 2002) ("[W]e have held that form contracts, offered on a take-it-or-leave-it basis, are agreements for purposes of the Arbitration Act.").

An examination of Rochester's claims against Honeywell under GESC I convinces the court that those claims are separate and distinct from Rochester's claims under GESC II and GESC III. GESC I and the performance bonds don't contain arbitration clauses, so Rochester's claims relating to GESC I and the performance bonds will be stayed pursuant to 9 U.S.C. § 3.

IV. CONCLUSION

Based on the foregoing, the court:

(1) DENIES the motions of Fireman's Fund [docket # 24] and Honeywell [docket # 25] for oral argument on the pending motions;

(2) DENIES Rochester's motion to strike portions of affidavits submitted by the defendants [docket # 43];

(3) DENIES Rochester's motion for remand [docket # 9]; and

   (4) GRANTS the motions of Honeywell [docket # 16] and Fireman's Fund [docket # 21] to compel arbitration and stay proceedings as follows:

    (a) the motion to compel arbitration is GRANTED with respect to Rochester's claims against Honeywell under GESC II and GESC III, and

    (b) the motion to stay is GRANTED with respect to Rochester's claims against Honeywell under GESC I and Rochester's claims against Fireman's Fund under the performance bonds.

  Based on the stay of a portion of Rochester's claims, the clerk of the court is DIRECTED to mark this action closed for statistical purposes. The court shall retain jurisdiction, and this case shall be restored to the trial docket upon motion of any party if circumstances change so that it may proceed to final disposition.

  SO ORDERED.

  ENTERED: __August 27, 2007__

          __/s/ Robert L. Miller, Jr.__
          Chief Judge
          United States District Court